

# NUMBER 13-18-00402-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

NAISMITH ENGINEERING, INC.,                                      Appellant,

v.

THE CITY OF ARANSAS PASS, TEXAS,                              Appellee.

### On appeal from the 343rd District Court
### of San Patricio County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

Appellant Naismith Engineering, Inc. (NEI) appeals from a plea to the jurisdiction

granted in favor of appellee the City of Aransas Pass, Texas (the City). By one issue,

NEI argues that the trial court erred when it granted the City's plea. We affirm.

### I. BACKGROUND

The City's manager, authorized by the City Council, entered into a contract with

NEI to design improvements to the boat-ramp area of the City's Conn Brown Harbor (CBH project). The scope of work by NEI for the CBH project included engineering, permitting, and administration services for the boating access and facilities at Conn Brown Harbor. NEI provided the design and the City then awarded the construction contract to J.M. Davidson, Ltd.

The City sued NEI, J.M. Davidson, Ltd., and RLI Insurance Company, who provided the surety on J.M. Davidson, Ltd.'s performance bond, alleging that there were deficiencies related to the CBH project. The City sought over $1,000,000 in damages. NEI subsequently counterclaimed against the City, seeking to recover outstanding fees for work performed pursuant to NEI's contract to work for the City as the engineer of record. NEI alleged that "[NEI] performed work ranging from general project services to general harbor engineering and planning and services for waterline extension. [The City] has failed to pay [NEI] for rendered services in breach of the parties' agreement." In its second amended counterclaim, NEI sought "approximately $611,575.36, plus interest, for work performed under the contractual relationship."

Arguing that it had governmental immunity, the City filed a plea to the jurisdiction challenging NEI's counterclaim. NEI countered that immunity had been waived by chapter 271 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. The trial court granted the plea to the jurisdiction, dismissing NEI's counterclaim. This appeal followed.

## II.    PLEA TO THE JURISDICTION

## A.    Standard of Review

2

Whether a court has subject-matter jurisdiction over a dispute that involves a governmental agency is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). On appeal, courts use a de novo standard in determining whether the plaintiff's pleadings allege sufficient facts to demonstrate that a trial court has jurisdiction over the controversy. *Id.* In reviewing the pleadings, courts are not to weigh whether the plaintiff's claims have merit; instead, courts must decide whether the pleadings and the evidence before the trial court demonstrate that the court may exercise jurisdiction over the parties' dispute. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

In reviewing whether the pleadings demonstrate that the trial court has jurisdiction over the subject of the dispute, the plaintiff's pleadings must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). When the plea "challenges the existence of jurisdictional facts," the relevant evidence submitted by the parties is considered, when necessary, in resolving the defendant's challenge. *Miranda*, 133 S.W.3d at 227. In this appeal, the dispute concerns whether NEI's pleadings and the evidence demonstrate that the Legislature waived the City's immunity regarding NEI's alleged breach of contract claim.

## B. Applicable Law

Political subdivisions in Texas have long enjoyed immunity from suit when performing governmental functions like that involved here. While this immunity can be waived, we have consistently deferred to the Legislature to do so; indeed, we have said immunity from liability "depends entirely upon statute." For its part, the Legislature has mandated that no statute should be construed to waive immunity absent "clear and unambiguous

3

language."

*City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) (internal citations omitted). The City is a home-rule city, meaning that it derives its powers from the Texas Constitution, not the Legislature.   *See* TEX. CONST. art. XI, § 5; *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) (citing *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975)).   Home-rule cities have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter."   *Proctor*, 972 S.W.2d at 733.   This includes immunity from suit for governmental functions.   *See City of Galveston*, 217 S.W.3d at 469.   Therefore, we must determine not whether any statute grants home-rule cities immunity from suit, but whether any statute limits their immunity from suit.   *Proctor*, 972 S.W.2d at 733.   Such limits exist only when a statute speaks with "unmistakable clarity."   *Id*.

The Legislature has waived governmental immunity as to certain contract claims. Local Government Code section 271.152 provides:

> A local governmental entity that is authorized by statute to enter into a contract and that enters into a contract subject to this subchapter waives immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152.   Section 271.151(2)(A) provides that a "[c]ontract subject to this subchapter" means "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."   *Id.* § 271.151(2)(A).

## C.    Analysis

### 1.    Breach of Contract

4

The City argues that NEI was unable to produce a written contract related to the "general services" for which NEI sought to recover damages. NEI counters that while there is no physical written contract available, it argues that production of the actual written contract is not necessary because it presented enough evidence of a written contract.

Our opinion in *Vantage Systems Design, Inc. v. Raymondville Indep. School District*, 290 S.W.3d 312 (Tex. App.—Corpus Christi–Edinburg 2009, writ ref'd n.r.e.), is instructive here. In that case, RISD never signed a contract but approved the plaintiff's proposal and made at least one payment for work done by the plaintiff. *Id*. at 314. The plaintiff argued that, even though there was no signed contract, multiple documents were exchanged between the parties which, taken together, formed a "properly executed" contract. *Id*. at 316. We held that the local government code's waiver of immunity did not apply because, while the plaintiff "pleaded the existence of a contract, it has not marshaled one, which in this situation is a key jurisdictional fact." Id. We declined to "apply the common law of contracts to a governmental immunity question." *Id*. Because the plaintiff could not marshal a contract sufficient to meet the requirements of section 271.152 in response to the arguments and evidence presented by the school district that no such contract existed, we affirmed the trial court's denial of the plea to the jurisdiction. *Id*. Here, as in *Vantage*, the City disputes NEI's contention that any contract for "general services" existed between the City and NEI. Section 271.151 clearly states that for a contract to waive governmental immunity it must be *written and properly executed*. *See* TEX. LOC. GOV'T CODE ANN. § 271.151 (emphasis added). Even

5

though NEI pleaded the existence of a contract, it has not marshaled one, which in this situation is a key jurisdictional fact. Accordingly, the City did not waive its immunity under § 271.151. *See Vantage*, 290 S.W.3d at 316.

### III. OFFSET WAIVER OF IMMUNITY

Alternatively, NEI argues that the City waived its immunity from suit on NEI's offsetting claims "that are germane to, connected with, and properly defensive to [the City's] claims." *See Reata Constr. Co. v. City of Dallas*, 197 S.W.3d 371, 376–77 (Tex. 2006) (op. on reh'g). NEI alleges that its counterclaims are allowed because it has counterclaimed for amounts owed "for services and for work done as the City's engineer of record, including work done on the [CBH project], which is the source of the City's claims for affirmative relief." The City responds that NEI's counterclaim was not based on amounts owed for services rendered on the CBH project, and therefore, are not germane to the City's claims against NEI.

At the hearing on the City's plea to the jurisdiction, David Underbrink, NEI's vice president, testified regarding NEI's counterclaims against the City. He testified that the City did not pay for all of the work NEI had done for it, and as such NEI was owed money. On direct, Underbrink specifically testified that the City "did pay for the boat ramp project." This testimony was confirmed on cross-examination:

> The City:    But for everything you have invoiced the City of Aransas Pass on the BAG grant project, Boating Access grant or boat ramp project, you have been paid, correct?
>
> Underbrink:    Correct.
>
> The City:    The other payments you're seeking, the other payments that Naismith Engineering is seeking, all relate to other projects,

6

correct?

Underbrink:　Work in and near the boat ramp and around town, yes.

The City:　　Other projects that were not under—

Underbrink:　Other issues, yes.

The City:　　They were not under the boat ramp project contract?

Underbrink:　They were not under that contract.

The City's suit against NEI, to which NEI counterclaimed, is specifically related to the services performed by NEI on the contract between NEI and the City on the CBH project, or the boat ramp project as the parties agree it has been referred to, not any other alleged services or contracts.

In *Reata*, the court explained that when:

> the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the governments recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe that it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.

*Reata*, 197 S.W.3d at 375–76. A governmental entity retains immunity from suit as to those claims for monetary damages that are not germane to, connected with, and properly defensive to the entity's claim. *City of Irving v. Inform Constr., Inc.*, 201 S.W.3d 693, 694 (Tex. 2006); *City of Angleton v. USFilter Operating Servs., Inc.*, 201 S.W.3d 677, 678 (Tex. 2006). By limiting the waiver to claims that are related to the sovereign's

7

claim, policy decisions regarding government spending remain intact.  *Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 415 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied).

While the City concedes that if NEI presented a counterclaim related to the CBH project, such counterclaim would be a compulsory counterclaim, effectively waiving the City's immunity; however, the evidence does not support NEI's contention that its counterclaim is related to the CBH project.  The counterclaim does not arise from the same transaction or occurrence that is the subject matter of the City's claim.  *See* TEX. R. CIV. P. 97(a).  The only common thread is that both claims involve alleged services performed by NEI for the City.  *See Crockett*, 257 S.W.3d at 416.  The counterclaim here does not meet the elements required by *Reata*; it is not germane to, connected with, and properly defensive to the City's claim.  *See Reata*, 197 S.W.3d at 375–76.  The City did not waive its immunity.

NEI's sole issue is overruled.

## IV.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed the
19th day of September, 2019.

8